## Richmond.

## GORDON METAL COMPANY V. KINGAN AND CO., LTD., AND SOUTHERN RAILWAY COMPANY.

March 16, 1922.

Absent, Burks and West, JJ.

1. DEEDS—*Rights of Grantee—All of Grantor's Rights Pass Unless a Contrary Intention Appears.*—The grantee, in a deed for land conveyed without any words of limitation, usually succeeds to every right of his grantor therein, or, as expressed in Virginia statutes, such a deed passes the *fee simple* or whole estate or interest which the grantor had power to dispose of, unless a contrary intention shall appear by the conveyance. (Code 1919, sec. 5149.)

2. CHESAPEAKE AND OHIO RAILWAY COMPANY—*Deeds—Siding—Reservation of Rights as to Siding Upon Grant of Land—Case at Bar.*—In the instant case, an action of unlawful detainer, it appeared that the Chesapeake and Ohio Railway Company, by agreement under seal, dated July 1, 1891, granted to defendant the right to construct a siding over certain of its realty, and to occupy and use the same for ten years, and thereafter, until one year's notice in writing from either party. By deed in 1905, the Chesapeake and Ohio conveyed to the plaintiff a certain parcel of land, which included a portion of the strip occupied by this sidetrack. This last deed contained a clause to the effect that the Chesapeake and Ohio Railway Company "further reserves from the operation of this deed all the rights" of the defendant, growing out of, or in any way connected with, the agreement bearing date the first day of July, 1891. Notice of defendant's contract was also given plaintiff by other language in the deed. Defendant was a large shipper over the lines of the Chesapeake and Ohio, which, therefore, had an interest for desiring the continued maintenance of the sidetrack, because to destroy it would injuriously affect its own business.

*Held:* That express notice of the existing contract with defendant was given to plaintiff, and by excepting it from the opera-

tion of the deed, the right to change the existing status by the independent action of the grantee was withheld.

3. INTERPRETATION AND CONSTRUCTION—*All the Language Must be Considered.*—It is fundamental that in construing written instruments all the language used must be considered and its true meaning determined if possible.

4. INTERPRETATION AND CONSTRUCTION—*Surrounding Circumstances and Motives.*—It is frequently helpful in determining the meaning of obscure and doubtful language to consider the surrounding circumstances and the probable motives of the parties.

5. WORDS AND PHRASES—*"Reserve."*—While the word "reserve" is an appropriate word when given its obvious and technical meaning to indicate that the grantor intended thereby to withhold something from the grantee, it is quite inappropriate and unnecessary if intended merely to preserve the existing rights of a third party under a contract with the grantor which were already otherwise fully safeguarded.

6. WORDS AND PHRASES—*Reserve—Reserve Equivalent to Except.*— To reserve from the operation of a deed appears to be the equivalent of excepting therefrom and retaining in the grantor some right, title or interest in the subject matter, which, but for such reservation, would pass thereunder to the grantee.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of unlawful detainer. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Samuel A. Anderson* and *Smith & Gordon,* for the plaintiff in error.

*Geo. Bryan, A. W. Patterson* and *Munford, Hunton, Williams & Anderson* and *Thos. B. Gay,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This is an action of unlawful detainer, wherein the Gor-

don Metal Company was plaintiff, and Kingan and Co., Ltd., and the Southern Railway Company were the defendants. There was a verdict and judgment in favor of the defendants.

The facts are, that by agreement under seal, dated July 1, 1891, the Chesapeake and Ohio Railway Company, hereinafter called the C. & O., granted to Kingan & Co., Ltd., hereinafter called Kingan, the right to construct or cause to be constructed, a railroad track across the basin (or upper dock) of the C. & O., in the city of Richmond, beginning on the line of Fourteenth street and running by a curved line to Dock street, opposite to the end of Fifteenth street. This agreement requires such track to be maintained at all times in good order by the grantee, Kingan, and the space occupied thereby to be only such as is reasonably necessary for its construction and maintenance. It also provides for the occupancy and use of the land occupied by the track for ten years, subject to certain qualifications which it is unnecessary at present to recite, and thereafter until one year's notice in writing from either party to the other, and Kingan agreed to remove the track upon receiving notice from the C. & O. so to do. It was further agreed that Kingan might arrange with the Richmond and Danville Railroad Company to construct, maintain and operate the track, which company was bound to observe all of the requirements of the agreement binding on Kingan, and Kingan agreed that, all things being equal, it would route its business for Virginia points, and such business as went south via Virginia Junction by the C. & O. Pursuant to such agreement, Kingan and the Richmond and Danville Railroad Company entered into an agreement, under seal, dated July 31, 1891, whereby the railway company undertook to construct and operate such track and agreed to observe all of the covenants of Kingan under the agreement of July 1, 1891, with the C. & O. Pursuant to

these agreements, the curved track, or switch, across the property of the C. & O. was constructed, and since has been used as a private siding for the accommodation of Kingan's business, and occasionally, apparently by consent, for other business. The Southern Railway Company, hereinafter called the Southern, became the successor in title of the Richmond and Danville Railroad Company as to the rights here involved. By the thirteenth clause of an agreement of November 2, 1899, between the Southern and the C. & O., the fourth clause of the agreement of July 1, 1891, between the C. & O. and Kingan as to the routing of the Kingan business was modified in the interest of the Southern.

By deed dated January 25, 1905, the C. & O. conveyed to the plaintiff (Gordon Metal Company) a certain parcel of land in the city, which included a portion of the strip occupied by this Kingan sidetrack, the remaining portion of such strip being the land of the Richmond Properties Corporation, which sidetrack was continuous, and crossed in a curved line both the property of the plaintiff and that of the Richmond Properties Corporation. This deed of January 25, 1905, to the plaintiff conveyed the land with general warranty, and this language was used therein, "together with all the right, title, interest and estate of the said The Chesapeake and Ohio Railway Company in and to the said land up to the east line of Fourteenth street, subject, however, to all the rights which the Mayo Bridge and Land Company, or other owner, may have acquired in the strip of land on the northeast corner of said lot above described, now occupied by a row of small brick buildings." The C. & O. also covenanted that it had the right to convey and for further assurance of the land. The deed also contains this language: "And whereas the said The Chesapeake and Ohio Railway Company has sold the property hereinbefore described to the party of the second part, the

said property being no longer necessary or expedient to be retained for use in connection with said railway, and now requires, in accordance with the resolution herein above recited, the trustees in the several deeds of trust or mortgage hereinafter referred to to release said property from the lien thereof in order to give perfect title to the purchaser. * * * It is further expressly understood, covenanted and agreed that this conveyance of the said piece or parcel of land is made subject to the following terms and conditions, to-wit:

"1. The Chesapeake and Ohio Railway Company reserves from the operation of this deed all the existing rights of whatever nature belonging to the Southern Railway Company for the maintenance and operation of its track, or tracks, and structures upon, along, or near the piece or parcel of land hereinbefore described.

"2. The Chesapeake and Ohio Railway Company further reserves from the operation of this deed all the rights of the Kingan Company growing out of or in any way connected with the agreement bearing date the first day of July, 1891, and recorded in the Chancery Court of the city Richmond, Va., clerk's office, in deed book 144-C, page 359, for the maintenance, use and operation of the sidetrack which passes through the northwestern portion of the lot hereby conveyed, and this conveyance is made subject to all the rights of entry and transit of Kingan and Co. and of the Southern Railway Company for the maintenance, use and operation of said sidetrack and trestles connected therewith."

On October 10, 1913, the plaintiff notified the defendants to remove the said sidetrack from its land on or before November 15, 1914, thus giving one year's notice, in accordance with the agreement of July 1, 1891, between the C. & O. and Kingan. The defendants refused to vacate the premises, and thereupon this action was instituted

to recover possession of the strip of land occupied by the said sidetrack.

The court, construing the contract, gave an instruction requiring the jury to find for the defendants, and refused an instruction presenting the contrary view of the plaintiff.

Several errors are assigned, but it is perfectly apparent that the decisive question which was presented to the trial court, and now to be determined here, is whether or not the deed of January 25, 1905, conveying the property, should be construed to grant to the Gordon Metal Company the right to terminate the agreement of July 1, 1891, between the C. & O. and Kingan, under which the sidetrack was constructed and has ever since been operated. Whether the trial court erred in the admission or rejection of evidence has become entirely immaterial, for whether admitted or rejected, the merits of the controversy are fully presented and must be determined by a construction of this conveyance of the C. & O. to the plaintiff.

The case has been thoroughly argued, and many propositions of law relating to the construction of written instruments have been presented and supported by authorities. These well-established doctrines are all helpful, but no one of them appears to us to be conclusive, for all discussions of the questions involved lead back to the provisions of the conveyance, which must determine this doubtful controversy.

[1] It certainly cannot be doubted, and this is urged by the plaintiff, that the grantee in a deed for land conveyed without any words of limitation, usually succeeds to every right of his grantor therein, or, as expressed in Virginia statutes, such a deed passes the *fee simple,* or whole, estate or interest which the grantor had power to dispose of, unless a contrary intention shall appear by the conveyance. (Code 1919, sec. 5149.) It is likewise true that under Code 1919, section 5512, "a grantee or assignee of any land let to lease,

or of the reversion thereof, and his heirs, personal representative or assigns shall enjoy against the lessee, his personal representative or assigns, the like advantage by action or entry for any forfeiture, or by action upon any covenant or promise in the lease, which the grantor, assignor, or lessor, or his heirs, might have enjoyed." So that this deed passes every right of the C. & O. to the plaintiff, unless a contrary intention is expressed therein. It is necessary, therefore, to consider and determine whether or not there was any intention on the part of the C. & O. to reserve its right to terminate the Kingan agreement, and to withhold from the plaintiff any such right, which was sufficiently expressed to be effective.

[2-6] Reverting, then, to the clause which we have quoted from the conveyance to the plaintiff, and bearing in mind the then existing facts, we observe that it was not necessary in that instrument for the protection of the existing rights of Kingan and the Southern to refer to the switch or sidetrack. These had been fully secured, defined and limited by the agreement of July 1, 1891, which had been duly recorded. It is also observed that if the intention of the conveyance was simply to give the plaintiff specific notice of Kingan's contract, this precaution was taken, as is shown by the concluding language, in the clause under scrutiny, namely: that "this conveyance is made subject to all of the rights of entry and transit of Kingan and Co. and of the Southern Railway Company for the maintenance, use and operation of the said sidetrack and trestle connected therewith." When it is borne in mind that this deed was drawn and accepted under the advice of counsel, it seems to us at least suggestive that the grantor was not content merely to use language clearly sufficient to convey the property subject only to Kingan's rights. There are other words in the same clause of the conveyance, the meaning of which we must determine, for it is fundamental that, in constru-

ing written instruments, all the language used must be considered, and its true meaning determined if possible. What, then, is the significance of this other language—that is, that "The Chesapeake and Ohio Railway Company further reserves from the operation of this deed all the rights of the Kingan Company, growing out of, or in any way connected with, the agreement bearing date the first day of July, 1891, for the maintenance, use and operation of the sidetrack"—and why was it necessary to enumerate this among the conditions for the performance of which the plaintiff was required to sign the deed and expressly covenant that the conveyance was subject to certain terms and conditions? It is frequently helpful in determining the meaning of obscure and doubtful language to consider the surrounding circumstances and the probable motives of the parties, and, pursuing this inquiry, we find that the sidetrack here involved is a small part of a continuous track leading from the lines of the Southern, and, while the C. & O. has now no property interest either in the track or in the land upon which it is located, it was and is substantially interested in the business of Kingan and Co. They are large shippers over the lines of the C. & O. from the west into the city of Richmond, who receive and dispatch substantial quantities of freight, whereby the business and revenues of the C. & O. are greatly augmented. This supplies a motive to the C. & O. in making the conveyance, for desiring the continued maintenance of the sidetrack, because to destroy it will injuriously affect its own business. It is possible that this injury might be only temporary, but this does not change the fact that the C. & O. had a substantial motive for desiring the continued operation of this sidetrack.

Then consider the use of the word "reserve." While that is an appropriate word when given its obvious and technical meaning to indicate that the grantor (C. & O.) in-

tended thereby to withhold something from the grantee (plaintiff), it is quite inappropriate and unnecessary if intended merely to preserve the existing rights of Kingan, which were already otherwise fully safeguarded. Then observe further that the C. & O. reserves something "from the operation" of the deed. That language seems to us to be most significant, for if the deed was intended not to operate in favor of the plaintiffs upon the rights of Kingan and Co. under the sidetrack agreement, it leaves those rights just as they existed before the conveyance was made, and while the land upon which the track is located belongs to the plaintiff, it has no right to terminate an agreement upon which its deed was not to operate. To reserve from the operation of a deed, appears to be the equivalent of excepting therefrom and retaining in the grantor some right, title or interest in the subject matter, which, but for such reservation, would pass thereunder to the grantee. To hold otherwise here would be to ignore the language used, to attach no significance thereto, and to construe the conveyance just as if it had been omitted. Express notice of the existing contract with Kingan was thereby given to the grantee, and, by excepting it from the operation of the deed, the right to change the existing status by the independent action of the grantee was apparently withheld.

We do not feel that any further elaboration of the question presented can clarify its manifest obscurities and difficulties, but, giving it our best thought and attention, our judgment accords with that of the learned judge of the trial court.

*Affirmed.*