**ASHWELL & COMPANY, Inc.,**
**Plaintiff-Appellee,**

v.

**TRANSAMERICA INSURANCE COM-**
**PANY, Defendant-Appellant.**

**No. 16787.**

United States Court of Appeals
Seventh Circuit.

Feb. 13, 1969.

Rehearing Denied March 3, 1969.

John P. Hampton, Roger D. Doten, Dent, Hampton & Doten, Chicago, Ill., for appellant.

A. Denison Weaver, Chicago, Ill., for appellee.

Before FAIRCHILD, CUMMINGS and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff Ashwell sued defendant Transamerica in a diversity action to recover certain fidelity losses (sustained prior to December, 1966) under a bond issued to it by Transamerica which insured Ashwell against losses caused by the dishonest acts of its employees. Transamerica answered and counterclaimed for reformation of the bond. Ashwell replied raising three affirmative defenses to the counterclaim. Transamerica amended its counterclaim to include an additional count claiming Ashwell owed an unpaid premium. Ashwell moved to dismiss the count seeking reformation or, in the alternative, for summary judgment. After both parties filed various affidavits and exhibits, the court granted the motion for summary judgment from which Transamerica now appeals.

The facts (as they appear from the pleadings, affidavits and exhibits) show that in late 1963, a partner in Ashwell requested Robert L. Slaughter (an insurance agent) to obtain a "Brokers' Blanket Bond" (Standard Form 14) for Ashwell from American Surety Co. After the bond was issued, Transamerica acquired American Surety. On July 1, 1964, Ashwell was incorporated and Transamerica rewrote the bond in order to reflect this change.

In December of 1966, certain negotiations or inquiries were had between Slaughter and Transamerica with a view to continuing the bond with lower coverage. By its terms, the primary bond would have expired on November 30 or December 1, 1966. If the court below was correct in holding that the bond was not a discovery bond,[1] then there would be no need to consider these negotiations as Ashwell would be covered for $100,-000 of loss discovered before December 1, 1967, if sustained prior to December 1, 1966.

On January 15, 1967, Ashwell discovered a fidelity loss of $250,000 caused by one of its employees. It was not disputed below that at least $102,500 of the loss was sustained prior to December 1, 1966. Ashwell then complied with the bond by filing a notice and proof of loss and all other conditions precedent to recovery of $100,000 from Transamerica. When Transamerica refused to pay more than $50,000, alleging that the bond was a discovery bond and had been reduced to $50,000 by the December, 1966, negotiations, Ashwell sued.

The primary bond form requested and as rewritten by Transamerica in 1964 was Standard Form 14 which provided:

In consideration of an agreed premium, the TRANSAMERICA INSURANCE COMPANY, a corporation of the State of California, with its Home Office in the City of Los Angeles, hereinafter referred to as Underwriter, hereby undertakes and agrees to indemnify and hold harmless

ASHWELL & COMPANY, INC., Chicago, Illinois hereinafter referred to as Insured, to an amount not exceeding - - -

ONE HUNDRED THOUSAND AND 00/100 . . . Dollars ($100,-000.00) from and against any losses

---

1. Standard Form 14 bonds cover losses sustained during the term of the bond and discovered up to one year after its termination. A discovery bond covers losses sustained at any time which are discovered during the term of the bond.

sustained by the Insured subsequent to noon of the date hereof and while this bond is in force, subject however, to the paragraph of this bond entitled INDEMNITY AGAINST LOSS UNDER PRIOR BOND OR POLICY, and discovered by the Insured subsequent to noon of the date hereof, and prior to the expiration of twelve months after the termination of this bond as an entirety as provided in the first paragraph of Section 10 or in any other manner.

\* \* \* \* \* \*

## THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:
### FIDELITY

(a) Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of any of the Employees. \* \* \*

This is not a discovery bond. This suit arose because Transamerica, in reissuing the bond in 1964, attached a discovery rider to Standard Form 14, allegedly without authority, which attempted to convert the primary bond to a discovery bond.[2] This rider was attached to the primary bond despite the fact that a note on the rider excludes its application to bonds covering insureds in Ashwell's type of business, i. e., note brokers.[3]

As briefed by the parties before us and as decided by the court below, the issue on which this case turns is one of con-

---

2. The discovery rider provided in pertinent part:

(For use only with primary Forms Nos. 14 and 14 Cons.)

To be attached to and form part of Blanket Bond, Standard Form No. 14, No. 9504–36–38 in favor of ASHWELL & COMPANY, INC., Chicago, Illinois and dated JULY 1, 1964.

In consideration of the premium charged for the attached bond, it is hereby agreed that:

1. The attached bond is amended:

(a) by deleting from the opening paragraph the words "sustained and discovered as hereinafter set forth" and by substituting in lieu thereof the following: "sustained by the Insured at any time but discovered after noon of the 1st day of July, 1964, and prior to the termination or cancellation of this bond as an entirety, as hereinafter set forth, or by mutual agreement."

(b) by deleting in its entirety the provision of the attached bond beginning with the words "THE LOSSES COVERED BY THIS BOND ARE THOSE SUSTAINED AND DISCOVERED AS FOLLOWS",

(c) by deleting from the Section entitled "LIMIT OF LIABILITY UNDER THIS BOND AND PRIOR INSURANCE" that part reading "which occur partly during the period of this bond and partly during the period of" and by substituting in lieu thereof the following:

"which are recoverable or recovered in whole or in part under any"

(d) by adding to the Conditions and Limitations an additional Section reading as follows:

"RIGHTS AFTER TERMINATION OR CANCELLATION

"Section 12 at any time prior to the termination or cancellation of this bond as an entirety, whether by the Insured or the Underwriter, the Insured may give to the Underwriter notice that it desires under this bond an additional period of twelve months within which to discover loss sustained by the Insured prior to the effective date of such termination or cancellation and shall pay an additional premium therefor. Upon receipt of such notice the Underwriter shall give its written consent thereto; provided, however, that such additional period of time shall terminate forthwith on the effective date of any insurance obtained by the Insured or its successors in business replacing in whole or in part the insurance afforded by this bond and in such event the Underwriter shall refund any unearned premium."

3. The note states:

Discovery Rider

For use with Blanket Bonds, Standard Forms Nos. 14 and 14 Cons., when issued as primary coverage to any eligible insured which is a member of the New York Stock Exchange or other recognized stock exchange, or whose principal business is management of or dealing in securities listed on such exchanges or in unlisted securities, excluding, however, any such concern engaged in

struction of the bond and the rider. The court below found conflicts between the bond and the rider and held for Ashwell on the basis of the rule that ambiguities in an insurance contract are to be resolved in favor of the insured. We do not find it necessary to reach this issue. We see the question before us to be whether Ashwell has established, as a matter of law, that the rider was attached by mistake and should be deleted by reformation.

The crucial factual issue on which this cause turns is whether Transamerica correctly issued a discovery bond as ordered or whether a discovery bond was not ordered but Transamerica erroneously attached a discovery rider to the primary bond. In regard to this issue, in support of its motion for summary judgment, Ashwell submitted the affidavits of Robert L. Slaughter and his father and a copy of the original application to show that a discovery bond was not ordered.[4] Ashwell also submitted the affidavit of Donald G. Reid, its partner responsible for ordering the insurance, who stated that he never requested the issuance of a discovery bond nor conversion to that form. In opposition, Transamerica submitted various affidavits and exhibits of which none had reference to the bond as originally issued, and, therefore, have no bearing on this issue. It also submitted the affidavit of Josiah B. Pritchard, its Bond Manager, which contained only one final paragraph regarding the original 1964 bond:

> 10. On July 1, 1964, Transamerica Insurance Company *intended* to issue to plaintiff and plaintiff *intended* to receive a broker's blanket bond insuring plaintiff, among other things, against losses sustained by plaintiff at any time but discovered after noon on

the first day of July, 1964, and prior to the termination or cancellation of such bond as an entirety. [Emphasis added.]

Federal Rule of Civil Procedure 56(e) governs the form of affidavits to be submitted in support and in opposition to motions for summary judgment. As amended in 1963, it states (1963 amendments in italics):

> (e) FORM OF AFFIDAVITS; FURTHER TESTIMONY; *DEFENSE REQUIRED* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, *answers to interrogatories,* or further affidavits. *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.*

The Committee Comments explain what necessitated the addition of the last two sentences in 1963. They state (6 Moore, Federal Practice ¶ 56.01 [14] at 2021):

> The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment de-

---

any other form of financing such as finance companies, dealers in mortgages or commercial paper or note brokers, to convert such bonds into "discovery" forms.

4. Slaughter stated in his affidavit that at no time did Ashwell request the issuance of the bond on a discovery basis nor did

Slaughter ever request a discovery bond from Transamerica or American Surety. Slaughter's father, who was associated with him in the agency, also filed an affidavit to this effect. The application for the bond made out to American Surety showed that Ashwell had applied for Standard Form 14 which is not a discovery bond.

vice. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not supposititious, conclusory, or ultimate.

■ We agree, with the district court that paragraph 10 of Pritchard's affidavit is merely conclusory and should not be considered in opposition to the affidavits and exhibits submitted by Ashwell. See Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347, 351 (9th Cir. 1963); Sears, Roebuck & Co. v. American Plumbing & Supply Co., 19 F.R.D. 334, 339 (E.D.Wis.1956); and other cases cited in 6 Moore, Federal Practice ¶ 56.22 [1] n. 25 at 2808–2809. Even under the Third Circuit's pre-1963 cases, such conclusory allegations were regarded as insufficient to oppose facts well-averred. See 6 Moore at 2021–22; and Robin Construction Co. v. United States, 345 F.2d 610, 614–615 (3d Cir. 1965). Also, Pritchard's statement as to Transamerica's intention does not set forth a specific fact shown to be within Pritchard's personal knowledge as required by Rule 56(e), which would be admissible in evidence. For this additional reason, it was properly disregarded. See American Securit Co. v. Hamilton Glass Co., 254 F.2d 889, 893 (7th Cir. 1958), and other cases cited in 6 Moore ¶ 56.22 [1] n. 17 at 2803–2805.

■■ As this Court observed as to Rule 56 in Repsold v. New York Life Ins. Co., 216 F.2d 479, 483 (7th Cir. 1954):

The court is authorized under the plain provisions of this rule to summarily determine whether or not a bona fide issue of fact exists between the parties to the action. A determination by the court that such issue is presented makes the rule inoperative. On the other hand, if the pleadings, and proof in the form of depositions, affidavits and admissions on file, disclose that no real cause of action or defense exists, the court may determine that there is no issue to be tried by a jury and may grant a summary judgment.

Rule 56 does not provide any method for exactly determining the presence of an issue of fact, and so each case depends upon the facts peculiar to it. Speaking in general terms, the court is not authorized under the rule to try issues of fact but it has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried.

The rule should not be used by the court for the trial of disputed questions of fact upon affidavits, but when it is invoked by either party to a case and a showing is made by the movant, the burden rests on the opposite party to show that he has a plausible ground for the maintenance of the cause of action alleged in his complaint, or if a defendant, that he has a ground of defense fairly arguable and of a substantial character. Pen–Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, at page 877.

Here, Transamerica failed to sustain its burden and thereby failed to create an issue of material fact which would prevent summary judgment against it.

The other issues raised by Transamerica depend on its version of the facts as to the type of bond originally issued and are, therefore, irrelevant in view of our disposition of the summary judgment issue.

For the foregoing reasons, the result reached in the court below is affirmed.

Affirmed.