NORTHWESTERN PUBLIC SERVICE COMPANY,
Plaintiff and Appellant
v.
CHICAGO AND NORTH WESTERN RAILWAY COMPANY,
Defendant and Appellant
and
ELLWEIN, Defendant and Respondent

(170 N.W.2d 351)

(File Nos. 10547, 10563. Opinion filed September 4, 1969)

Rehearing denied October 8, 1969

**William S. Churchill,** of **Churchill, Sauer, Manolis & Hoyt,** Huron, for plaintiff and appellant.

**A. D. Sommervold,** of **Woods, Fuller, Shultz & Smith,** Sioux Falls, for defendant and appellant.

**Ross H. Oviatt,** of **Loucks, Oviatt, Bradshaw & Green,** Watertown, for defendant and respondent.

HALL, Circuit Judge.

This is a declaratory judgment suit to determine the rights and obligations of the parties under a license agreement given by defendant railway company to plaintiff Northwestern Public Service Company for the construction of a power line along railway property and deeds thereafter given by defendant railway company to defendant Ellwein covering a portion of the railway property included in the license agreement.

The license agreement entered into by defendant railway company and plaintiff, dated January 26, 1959, covered the property later platted as Ellwein's Outlots number 1 and number 2 and the adjoining railway property extending for a considerable distance, as shown by plats made a part thereof. By this agreement, defendant railway company licensed plaintiff to con-

struct, maintain and use an electric transmission line upon defendant railway property at Watertown, South Dakota, for an indefinite period, beginning October 19, 1958, and continuing until terminated by the written request of the licensee or the railway company.

Paragraph #8 of the license agreement provides specifically that the railway company or the licensee shall have the right to revoke the license at any time by giving 30 days written notice, and upon revocation of the license the licensee will, at its own expense, promptly remove its facilities from the railway property. The license provided for payment by the licensee to the railway company of an annual rental of $640.00 in advance. The license further provides that the benefits of the license shall accrue to the railway company, its successors and assigns.

On March 11, 1966, defendant Ellwein submitted an offer to purchase from the defendant railway company property subsequently platted as Ellwein's Outlots number 1 and number 2. A part of this offer to purchase provided:

"Seller shall convey or cause said premises to be conveyed to buyer or his nominee by quit claim deed subject to the exceptions and reservations and in accordance with the other terms and conditions shown on the reverse side hereof."

On the reverse side of said Offer to Purchase under Section A— Exceptions, there are included Sub-paragraph (8) and Sub-paragraph (12) which provide as follows:

"(8)—Rights of any Government Agency, public or quasi public utilities to occupy said premises for the use and maintenance of existing conduits, sewers, drains, water mains, gas lines, electric power lines and other utilities, whether or not of record."

and

"(12) Existing Leases and Licenses."

The reverse side, or page 2, of this Offer to Purchase, under Section B—Reservation, Sub-paragraph (2) provides as follows:

"(2) A reservation of the right and privilege for the continued maintenance, operation and use of all existing driveways, roads, conduits, sewers, water mains, gas lines, electric power lines, wires and other utilities and easements of any kind whatsoever on said premises, whether or not of record, including the repair, reconstruction and replacement thereof."

The Offer to Purchase included an addendum providing that the conveyance should be

"Subject to the terms of the License with NWPS Co. for power line crossing sales area."

By two separate deeds, dated June 13, 1967, defendant railway company conveyed to Fred E. Ellwein, Ellwein's Outlots number 1 and number 2. These two deeds are exactly the same in form, with the single exception of the description of the real property and are quit claim deeds. Each of these deeds contains the following provisions:

"Subject, however, to the terms of the License with Northwestern Public Service Company for the power line crossing the above described real estate."

and

"Excepting and reserving, however, unto the Grantor, its lessees, licensees, successors and assigns, the right to maintain, operate, use, reconstruct and replace any and all existing conduits, sewer, water mains, gas lines, electric power lines, communication lines, wires and ·other utilities on said real estate."

There is no language in any of the instruments, other than that set forth above, which may be construed as an exception or reservation to the railway company of the right to terminate the license or the right to rental payment.

At the time of said Offer to Purchase and at the time of the execution and delivery of said deeds, plaintiff Northwestern Public Service Company had constructed and was maintaining a high-voltage electric transmission line over and across the railway company's property covered by the license; said electric transmission line running over and across said Ellwein's Outlots number 1 and number 2.

Defendant Ellwein, on September 11, 1967, served upon plaintiff a notice of revocation of license, to terminate the license given by defendant railway company to plaintiff as it may have affected Ellwein's Outlots number 1 and number 2.

Following the service of notice of revocation of license upon plaintiff, this action was commenced under the provisions of the Uniform Declaratory Judgment Act, SDCL 1967 Ch. 21-24, (SDC 37.01) seeking judicial determination of the rights of the several parties.

A motion by defendant railway company for summary judgment was denied by the trial court and defendant Ellwein's motion for summary judgment was granted, quieting title in the defendant Ellwein to the property covered in the deeds, and ordering the plaintiff Northwestern Public Service Company to forthwith remove its property from said premises. By separate appeals plaintiff and appellant Northwestern Public Service Company and defendant and appellant Chicago and North Western Railway Company contend that the trial court failed to properly construe the basic documents of the transaction, consisting of the license given by defendant railway company to plaintiff, the offer to purchase presented by defendant Ellwein to defendant railway company and accepted by it, and the deeds given by the defendant railway company to defendant Ellwein.

■ Appellants contend that the motion by the defendant Ellwein for summary judgment should have been denied and the motion for summary judgment by defendant railway company should have been granted under the terms of the quit claim deeds for the reason that such conveyances expressly recited that the title conveyed was subject to the terms of the license for the existing transmission line, and excepted from the conveyance of title to Ellwein and reserved to the grantor, the defendant railway company, its lessees and licensees, the right to maintain the electric transmission line.

The provision in each of the deeds that the conveyance was "subject, however, to the terms of the license with Northwestern Public Service Company for the power line crossing the above described real estate," together with the presence of the power line across the lots conveyed, clearly gave defendant Ellwein knowledge of the power line and the license referred to above.

This court in Renner v. Crisman, 1964, 80 S.D. 532, 127 N.W.2d 717, defined the words "subject to" as used in a conveyance as being a term of qualification and in the ordinary sense of the words meaning that the conveyance is "subordinate to," "subservient to," "limited by," or "charged with," and nothing in the use of these words connotes reservation or retention of property rights.

The words "excepting" and "reserving," as used in the above quoted clause of the deeds, indicate a withholding from the grant of some estate or right in the subject of the grant. Grand Crossing Land & Improvement Company v. City of Mobridge, 1917, 39 S.D. 574, 165 N.W. 988.

■ Northwestern Public Service Company's right to continue to maintain its transmission line over the lots deeded to Ellwein is challenged by Ellwein on the ground that the exceptions in the conveyances could not vest any title or interest in a stranger. Northwestern Public Service Company, prior to the execution and delivery of the deeds by Chicago & Northwestern

Railway Company to defendant Ellwein, had no rights as to the land conveyed except its rights for the electric transmission line provided by the terms of the license agreement. There is no claim by the Northwestern Public Service Company that it acquired any additional rights by such conveyances, and it contends only the continued right to maintain its electric transmission line under the terms of the license agreement.

"An exception of an interest or right already existing in the stranger operates according to its terms as an exception from the grant, although it does not alter or enlarge existing rights or interests in the premises which are outstanding in the stranger at the time of the deed." 23 Am.Jur.2d, Deeds, § 280, p. 315; 88 A.L.R.2d 1222, Sections 17 and 18; Stetson v. Nelson, 1962, N.D., 118 N.W.2d 685.

When considered in the light of the license agreement, the existing power line and the meaning of the terms under established law of this state, it is clear that the parties' intentions, as shown by the reservations and exceptions in the deeds executed by the defendant railway company, was to reserve from the operation of the deeds and retain in the grantor railway company the right to maintain, operate, use, reconstruct and replace the electric transmission line in existence across the lots conveyed. Defendant railway company retaining this right as to the electric transmission line, retained the right to continue the license to the plaintiff. Plaintiff Northwestern Public Service Company, by the exception in the deeds, retained, after the execution of the deeds, the rights which it previously had under the terms of the license agreement with defendant Chicago & Northwestern Railway Company. Defendant Ellwein, having acquired no interest in the subject of the license, could neither receive compensation therefor nor exercise the power of revocation, and his motion for summary judgment should have been denied by the trial court. See Gordon Metal Company v. Kingan & Company, 1922, 132 Va. 229, 111 S.E. 99.

■ Defendant railway company moved for summary judgment under SDCL 1967 15-6-56. This court in Wilson v.

Great Northern Railway Company, 83 S.D. 207, 157 N.W.2d 19, set forth guiding principles for courts ruling on motions for summary judgment, including the following:

> "(1) The evidence must be viewed most favorable to the nonmoving party; (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them. (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant. (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses."

Respondent Ellwein, by his counterclaim and cross-complaint, alleges that in his purchase of the lots from defendant railway it was intended by the parties that Ellwein should have rights as a successor to the railway company to revoke and terminate the license as to the realty purchased. In his prayer for relief, respondent Ellwein requests that the deeds be revised to express such intent.

The plaintiff and defendant railway company each, by separate reply or answer, makes a general denial as one of the defenses to Ellwein's cross-complaint.

Applying the principles set forth in Wilson v. Great Northern Railway Company this court cannot say that the issue is

sham, frivolous or so unsubstantial that it obviously would be futile to try.* Defendant railway company's motion for summary judgment was, therefore, properly denied by the trial court.
Reversed.

RENTTO and HOMEYER, JJ., concur.

ROBERTS and HANSON, JJ., dissent.

HALL, Circuit Judge, sitting for BIEGELMEIER, P. J., disqualified.

ROBERTS, Judge (dissenting in part).

The crucial question before this court is whether appellant Chicago and North Western Railway Company was entitled upon the record to summary judgment. In considering such a motion, the trial court does not decide a factual issue, but determines whether any factual issue exists which requires determination by the trier of fact. National Screen Service Corporation v. Poster Exchange Inc., 5 Cir., 305 F.2d 647; Ashwell & Company v. Transamerica Insurance Company, 7 Cir., 407 F.2d 762.

SDCL 1967, Rule 15-6-56(c) provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

---

* In a Supporting Affidavit on Motion for Production of Documents under Rule 34, Ross H. Oviatt, Ellwein's counsel, sets forth that on March 11, 1966, when Ellwein signed the Offer of Purchase, the defendant railroad represented that by putting in paragraph 9 (the provision, subject to the terms of the license with NWPS Co.) Ellwein would succeed to the railroad's right to terminate the license and it was so interpreted by the railroad. Also, after July 13, 1966, when Ellwein was advised the Board of Directors had accepted the Offer to Purchase, it was indicated to Oviatt, both in writing and by telephone, that the railroad construed the Contract to give Ellwein the right to terminate the license, and had sought to negotiate a modification of this right, but eventually executed deeds conforming to the contract.

Attached to a Request for Admissions under Rule 36 are two documents: Exhibit 1, a copy of Control Sheet No. 3197 by which Ellwein's Offer to Purchase was, on March 14, 1966, transmitted to the real estate office of the railroad. It contains a Note to Closing Department, purchaser also wishes to know the terms of the NWPS license with regard to relocation of the wires and poles. Exhibit 2, a copy of an interoffice communication dated June 28, 1966, from B. R. Meyers, V.P.-Chief Engineer, to I. R. Ballin, V.P.-Real Estate, states: "The license with Northwestern Public Service Company, of course, is a 30-day cancellable license, however, this transmission line is a 69,000 volt line and it appears that the purchaser should be required to be most considerate of the Power Company in the relocation or removal of this power line."

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

SDCL 1967, Rule 15-6-56(e), which includes the 1963 amendments to Rule 56(e), F.R.Civ.P., states:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, **answers to interrogatories,** or further affidavits. **When a motion for summary judgment is made and supported as provided in (this rule)** \* \* \*, **an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in (this rule)** \* \* \*, **must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."** (Amendments of 1963 in boldface).

The amendments were made to overcome precedents which permitted a party opposing a motion for summary judgment to rely solely upon allegations contained in pleadings. The Advisory Committee comments on the amendments as follows: "The last two sentences are added to overcome a line of cases \* \* \* which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a

material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. * * * The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The * * * doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule." See Committee's notes contained in 6 Moore's Federal Practice 2021 and 2022.

Appellant railway company supported its motion for summary judgment by documentary evidence. The license agreement entered into by appellants, the offer of defendant to purchase the two lots showing its terms and conditions and the two deeds excepting from the conveyances of title certain property rights are fully set forth in the majority opinion. These instruments control and furnish requisite evidence of the intention of the parties. See Teutsch v. Hvistendahl, 72 S.D. 48, 29 N.W.2d 389; Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250. The mere allegations in defendant's pleadings that the writings fail to express the intention of the parties are not sufficient to create a genuine issue as to a material fact and thus prevent summary judgment. Liberty Leasing Co. v. Hillsum Sales Corporation, 5 Cir., 380 F.2d 1013. In opposition to the motion, defendant submitted the affidavit of his counsel. The affidavit whose form and content is governed by the rule under consideration does not set forth a specific fact shown to be within the personal knowledge of counsel which would be admissible in evidence. See 6 Moore's Federal Practice 2801 to 2805 and cases cited in note 17.

The judgment in my opinion should be reversed and the cause remanded with direction to grant motion of defendant railway company for summary judgment.

HANSON, J., concurs in dissent.