Fred E. ELLWEIN, Plaintiff and Appellee,

v.

CITY OF WATERTOWN, South Dakota, a Municipal Corporation, and the Municipal Utilities Department of the City of Watertown, Watertown, South Dakota, Defendants and Appellants.

No. 12902.

Supreme Court of South Dakota.

Considered on Briefs Nov. 26, 1980.

On Reassignment Feb. 3, 1982.

Glen A. Severson of Benson, Wehde & Severson, Huron, Robert M. Halvorson of Gislason, Dosland, Malecki, Gislason & Halvorson, New Ulm, Minn., for plaintiff and appellee.

Irving A. Hinderaker and Paul I. Hinderaker of Austin, Hinderaker & Hackett, Watertown, for defendants and appellants.

WOLLMAN, Chief Justice (on reassignment).

The city of Watertown (city) appeals from a judgment that ordered the city to remove its electric transmission lines and poles from certain property belonging to appellee (Ellwein) and that held that Ellwein was entitled to damages for the operation of those electric transmission lines over the property after January 1, 1976. We reverse and remand.

This is the third time that controversy over the transmission lines and the property in question has been before us. A full statement of the factual background giving rise to the controversy may be found in the Court's decision in *Northwestern Pub. Serv. Co. v. Chicago & N.W. Ry. Co.*, 84 S.D. 271, 170 N.W.2d 351 (1969). Briefly restated, those facts are that on January 26, 1959, the Chicago and North Western Railway Company (railroad) granted Northwestern Public Service (NWPS) a license to construct, operate, and maintain an electric transmission line over the railroad's right-of-way. On June 13, 1967, Ellwein purchased from the railroad a portion of the railroad's right-of-way that was covered under the terms of the license. The two quit claim deeds that the railroad gave to Ellwein contained the following provisions:

Subject, however, to the terms of the license with Northwestern Public Service Company for the power line crossing the above described real estate.

Excepting and reserving, however, unto the Grantor, its lessees, licensees, successors and assigns, the right to maintain, operate, use, reconstruct and replace any and all existing conduits, sewer, water mains, gas lines, electric power lines, communication lines, wires and other utilities on said real estate.

In September of 1967, Ellwein served notice on NWPS that he had terminated its license to maintain and operate the electric transmission lines across the property conveyed to him by the quit claim deeds. NWPS then commenced a declaratory judgment action against the railroad and Ellwein for a determination of the rights of the parties. Reversing the summary judgment that had been granted to Ellwein by the circuit court, this Court held:

The words "excepting" and "reserving" as used in the above quoted clause of the deeds, indicate a withholding from the grant of some estate or right in the subject of the grant. . . .

. . . .

When considered in the light of the license agreement, the existing power line and the meaning of the terms under established law of this state, it is clear that the parties' intentions, as shown by the reservations and exceptions in the deeds executed by the defendant railway company, was to reserve from the operation of the deeds and retain in the grantor railway company the right to main-

tain, operate, use, reconstruct and replace the electric transmission line in existence across the lots conveyed.... Defendant Ellwein, having acquired no interest in the subject of the license, could neither receive compensation therefor nor exercise the power of revocation, and his motion for summary judgment should have been denied by the trial court.

84 S.D. at 276–77, 170 N.W.2d at 354–55.

On remand, the case was tried on the theory of rescission of the conveyance of the property from the railroad to Ellwein. In the appeal from that judgment, we held as follows:

Upon examination of the record it is apparent the deeds constituted an agreement in writing, as between Ellwein and the Railway Company, and the meaning of that agreement is clear and complete, superseding all oral negotiations prior to the delivery of the instruments. Moreover, as stated in our previous opinion, it is clear from the language used in the deeds that the grantor, Railway Company, intended to reserve from the operation of the deeds the power company's right to maintain and use the electric line.

*Northwestern Pub. Serv. Co. v. Chicago & N.W. Ry. Co.*, 87 S.D. 480, 484, 210 N.W.2d 158, 160–61 (1973).

In 1975 the city entered into an agreement with NWPS for the purchase of the electric transmission lines running over the railroad right-of-way through the city, including that portion of the lines crossing the property that Ellwein had purchased from the railroad. On December 4, 1975, the city took possession of the electric transmission lines. The agreement under which the transfer of the lines was made provided that the closing date should be February 1, 1977, at which time NWPS was to deliver instruments of conveyance and assignment and the city was to pay the remaining balance of the purchase price.

Following the December 4, 1975, transfer, the railroad continued to bill NWPS for a license fee for the transmission lines. At the request of NWPS a representative of the city asked the railroad to make future billings for the license fee to the city. In October of 1976, the railroad responded to this request by sending the city a new license agreement, dated January 1, 1976, which stated that it superseded and terminated the license that had been issued to NWPS on January 26, 1959. This new license did not include a description of the Ellwein property.

On October 30, 1976, Ellwein sent the city a notice of revocation of license and demanded that the electric transmission lines be removed from the property in question.

The February 1, 1977, closing of the agreement between the city and NWPS was postponed until June 1, 1977, when NWPS delivered, along with other necessary documents, an assignment of the January 26, 1959, license. The assignment was on a form issued by the railroad and was expressly consented to by the railroad.

On January 6, 1977, Ellwein commenced the present action against the city. The city counterclaimed for a judgment declaring the respective rights of the parties with respect to the property in question. On August 9, 1979, the trial court entered the judgment that is the subject of this appeal. The trial court found that the January 1, 1976, license agreement terminated and superseded the January 26, 1959, license agreement and concluded that the encumbrance upon Ellwein's property created by the 1959 license agreement had been removed.

Although the city advances four arguments in support of its contention that it has the authority to maintain and operate the electric transmission facilities across Ellwein's property, we need address only the city's first argument, for we find it to be determinative of the issue presented. In short, we agree with the city that our 1969 decision in the first appeal, the pertinent portion of which is quoted above, quite clearly held that the effect of the exception and reservation clause in the quit claim deeds was to retain in the railroad its rights with respect to the electric transmission lines, such rights to be also vested in the railroad's licensees. Implicit in our holding in the first appeal that by retaining its

rights regarding the electric transmission lines the railroad retained the right to continue the license to NWPS is the holding that this right could be vested in licensees other than NWPS. Accordingly, the termination of the January 26, 1959, license was immaterial and vested no new rights in Ellwein. Accordingly, the trial court should have entered judgment in favor of the city on its counterclaim and in accordance with its proposed findings, conclusions, and judgment.

The judgment is reversed, and the case is remanded to the circuit court for the entry of judgment consistent with the views set forth in this opinion.

DUNN and MORGAN, JJ., and HECK, Circuit Judge, concur.

HENDERSON, J., concurs in result.

HECK, Circuit Judge, sitting for FOSHEIM, J., disqualified.