This case is here upon appeal from an order denying a petition of the appellants Catalina Campillo de Cline, Blanca Campillo de Cline and Mamye Elizabeth Campillo de Cline, wherein they asked to intervene and be made parties in a suit instituted by the appellees for the purpose of partitioning real estate. *Page 490 
It appears from the petition that one Jacob Frederick Cline, a devisee under the will of his mother, Julia F. Cline, had an interest in certain real estate; that on October 11, 1900, he was married to one Catalina de Campillo at Santiago, Cuba, and that as a result of this union two children, Blanca Campillo de Cline and Mamye Elizabeth Campillo de Cline, were born; that
 (one of the complainants in the partition suit)
 "Inez Cline and Jacob Frederick Cline were never lawfully married. That at the time of the alleged cohabitation between Jacob Frederick Cline and Inez Cline, out of which the issues of Frederick Cline and Robert L. Cline, came, there existed a lawful, valid and binding marriage between one of your petitioners, Catalina Campillo de Cline and Jacob Frederick Cline, deceased. That said marriage continued from and after October 11th, 1900, the date of said marriage, until the death of Jacob Frederick Cline, deceased, which occurred on March 9th, 1919. That Inez Cline, Frederick Cline and Robert L. Cline are not heirs at law of Jacob Frederick Cline, deceased, neither are they or either of them lawfully entitled to an interest in the property described in the complainants' bill of complaint and of this petition for intervention;"
that the complainants are not the heirs of Jacob Frederick Cline, nor the owners of an undivided interest in said lands, but that the petitioners are the owners of an undivided interest therein.
To the petition was attached the following affidavit:
 "ISLAND OF CUBA, CITY OF SANTIAGO, PROVINCE OF ORIENTE.
 "Personally appeared before me, Catalina Campillo de Cline, who first being duly sworn deposes and says that she is one of the petitioners named in the foregoing *Page 491 
petition, and that she has read the foregoing petition and knows the contents thereof, and that the same is true of her own knowledge, except as to matters therein stated or alleged on information and belief, that as to those matters she believe the same to be true.
 Catalina Campillo de Cline Buada
 "Sworn and subscribed to before me this the two day of October A.D. 1929.
 Dr. Ernesto Pujals y de Quesada. (SEAL) Notary Public."
The signature and seal of the notary public to the affidavit were duly authenticated by a vice-counsel of the United States of America.
The order of the court denying the petition contains the following recitals:
 "The court has considered the petition and is of the opinion it does not measure up to the rule as enunciated in decisions of our Court regarding such matters, and is insufficient to meet such requirements.
 "There is another feature of the petition connected with the petition that is so patent thereon that it compelled attention. The petition is for and on behalf of Catalina Campillo de Cline and the named children. It is necessary in a proceeding of this kind that such petition be sworn to, and for this purpose this petition was forwarded to Santiago, Cuba, and where the affidavit was to be completed. The affidavit states that 'Personally appeared before me Catalina de Cline' etc., but the signature is that of Catalina Campillo de Clarnez, or Clarno or Clarnet, and over the latter three or four letters of the original signature is heavily written the letters 'ine' which makes the name read 'Cline' but it is evident that such was not the case with the original lettering. It is also manifest that the letters 'ine' were not written by the person writing the original letters and over which the indicated three letters *Page 492 
have been placed. The ink used in making the three letters 'ine' appears to be the same as was used in the words 'two' and 'October.'
 "As the court sees it, it will be better to allow this case to go forward with the parties therein as now constituted, and if the applicant for intervention so desires she may protect any right she might have by original proceedings."
Our statute provides that bills for partition may be filed by any one or more of several joint tenants, tenants in common or coparceners, against their cotenants, coparceners or others interested in the land to be divided. Section 4996 (3204) Compiled General Laws of Florida, 1927.
This Court has held that the statute authorizes the partition of land only among those who have title thereto (Dallam v. Sanchez, 56 Fla. 779, 47 So. 871), and also, that it requires all such cotenants or coparceners to be made parties to the suit if known. Camp Phosphate Co. v. Anderson, 48 Fla. 226, 247, 37 So. 722, 111 Am. St. Rep. 77; Lovett v. Lovett, 93 Fla. 611, 648, 112 So. 768. See also Yager v. North South Alafia River Phosphate Co., 82 Fla. 38, 89 So. 340.
There is nothing on the face of the bill to indicate that this is not a bona fide proceeding for the partition of the land therein described between tenants in common.
It is contended by appellees that petitioners are seeking to oust the court of jurisdiction.
 "In the absence of a statute authorizing it, a court of equity has no authority, generally speaking, to adjudicate the validity of an adverse legal title set up by the defendant in a suit for partition. * * *
 Sections 1490-1497, Rev. St. 1892 (Sections 4994-5001, Compiled General Laws of Florida, 1927) regulate *Page 493 
proceedings for partition in this State. * * * Before the statute was passed, equity had authority to entertain suits for partition, and it always had jurisdiction to adjudicate an equitable title in such proceeding. And in such suits a bare denial of complainant's legal title was not sufficient to send the complainant to law to establish it, but it was necessary for defendant to set out in his answer his own, if he claimed adverse to complainant, or to show wherein complainant's title was defective if he denied such title; and if, upon the showing made, there appeared no valid legal objection to complainant's title, the court of equity could proceed with the partition. It was only when the statement showed a disputed or doubtful legal title that the complainant would be remitted to his action at law. The defect in the law as it then stood was that in all cases where one joint owner had ousted another, or claimed adversely under a doubtful legal title, or disputed the other's title, such other must maintain two actions — one at law to establish his title or right of possession, the other in equity for partition — before he could secure partition of the joint property. * * * Whenever the case is properly one of partition, one whose bona fide object is the partition of the lands between common owners thereof, one or more of whom are complainants and the others are defendants, then all controversies between them as to the legal title may and should be settled by the chancellor under our statute." (Sections 1490-1497 Rev. Stats. of 1892, Sections 1939-1946, Gen. Stats. 1906, Sections 3202-3209, Rev. Gen. Stats., 1920, Sections 4994-5001, Compiled General Laws of Florida, 1927). Camp Phosphate Co. v. Anderson, 48 Fla. 226, text 242, 244 and 245, 37 So. 722, text 728, 729, 111 Am. St. Rep. 77. See also Williams v. Clyatt, 53 Fla. 987, 43 So. 441; Street v. Benner, 20 Fla. 700; Rivas v. Summers, 33 Fla. 539, 15 So. 319. *Page 494 
In Williams v. Clyatt, supra, the defendant, who with the grantor of complainant inherited certain lands from her father, acquired a tax title to the same and sought to oust the jurisdiction of the court by setting up by plea, in a partition proceeding, a title hostile to the complainant's title; and this Court in discussing the plea said that if the plea had
 "sufficiently set out an apparently valid adverse title claimed by them, so as to require an adjudication of it, the court in this proceeding could, under the authority above quoted (Camp Phosphate Co. v. Anderson, supra), 'proceed to ascertain and adjudicate the rights and interests of the parties * * * by a hearing upon the pleadings and proofs,' and 'to decree that partition be made if it shall appear that the parties are entitled to the same.' "
Therefore we deem the rule to be fixed in this jurisdiction that when the bona fide object of a case is the partition of lands between common owners, the court will not permit the assertion of an adverse title, on the part of the defendant or defendants, in itself, to deprive the court of jurisdiction to hear the cause and determine the right and interest of the parties.
In the instant case the petitioners were not made parties to the suit by the complainant. Certainly they would be proper parties; but under the showing made, are they necessary or indispensable parties? It will doubtless be conceded that if they are the true owners of the share claimed by the complainants, no decree rendered in the cause, unless they (petitioners) are made parties thereto, would divest or destroy their title; but a decree of partition or sale would cast a cloud upon it.
If the petitioners have title to an interest in the property and are not made parties to this litigation, they would *Page 495 
have the right, as is conceded, to institute original proceedings for the purpose of ascertaining and obtaining their share, and in the event a decree of partition or sale should be rendered herein without having them before the court, there would be nothing to hinder them from bringing about another division or sale upon proper pleadings and proof, to the embarrassment and perhaps prejudice of their cotenants or the purchaser at such sale.
If complainants have a good title to an undivided interest in the property, it may be settled by bringing in the petitioners as parties to the proceeding. If it should develop that complainants have no title, it would be inequitable to proceed to a partition or sale of the property and then later undo by other litigation what might be done herein.
For these reasons, no doubt, this Court has repeatedly held that persons whose interests will necessarily be affected by any decree that can be rendered in a cause are necessary and indispensable parties and that the court will not proceed without them. Florida Land Rock Phosphate Co. v. Anderson,50 Fla. 501, 39 So. 392; Worley v. The Dade County Security Co.,52 Fla. 666, 42 So. 527; Hull v. Burr, 62 Fla. 499, 504, 56 So. 673; Indian River Mfg. Co. v. Wooten, 48 Fla. 271, 37 So. 731; Robinson v. Howe, 35 Fla. 73, 17 So. 368; Craver vs. Spencer,40 Fla. 135, 23 So. 880; Oakland Properties Corp. vs. Hogan,96 Fla. 40, 117 So. 846; Bannon v. Trammell, 96 Fla. 408,118 So. 167; Brecht v. Bur-Ne Co. 91 Fla. 345, 108 So. 173; The Sarasota Ice, Fish Power Co. v. Lyle Co., 53 Fla. 1069, 43 So. 602.
In an opinion prepared by Mr. Justice Ellis, the Court in Brecht v. Bur-Ne Co., supra, said:
 "It is * * * a rule of equity pleading that persons whose *Page 496 
interests are adverse to those of the complainant should be made defendants by name, where they are necessary or proper parties and their names are known. To be made defendants they must be made so by complainant in the bill and served with process, or by order of court upon their own intervention."
The petition shows that the marriage of Catalina Campillo de Cline and Jacob Frederick Cline continued until his death and that the other two petitioners are children of such marriage. If the marriage continued until the death of Jacob Fredrick Cline, then the wife, Catalina, is a proper party to the suit and even though it did not so continue, the dissolution of the marriage would not affect the relationship of the daughters to the deceased Jacob Frederick Cline and, as we have seen, if they have an interest in the property, a decree in the pending suit would affect it.
The petitioners are requesting that they be made parties to the litigation and if they were not voluntarily offering to submit themselves to the jurisdiction of the court, they could be served constructively with process that would bind the property, and in consequence thereof, there can be no impediment in the way of making them parties. We have already seen that if they are made parties to the litigation and they set up an adverse claim to the interest contended for by the complainants, the court under our statutes will not only not be deprived of jurisdiction to hear and determine their rights and interests in and to the subject-matter of the suit, but it will become the duty of the court to hear the cause and if it should be found that the complainants have no interest in the property, the bill should be dismissed, unless the pleadings as then framed will justify a partition between the common owners of the property. *Page 497 
We have been cited to no law requiring an oath to the petition to be in writing and signed by the person making it. As a rule an oral oath is sufficient unless a written oath is prescribed. 46 C.J. 843; Outlaw v. Davis, 27 Ill. 467; Davis v. Berger, 54 Mich. 652, 20 N.W. 629; Galveston H. S. A. Ry. Co. v. Baudat, 18 Tex. Civ. A. 595, 45 S.W. 939.
It is immaterial whether the name subscribed to the affidavit as shown by the document is "Cline," "Clarnez," "Clarno," or "Clarnet."
We have considered all objections raised to the petition and find that they are without merit. The order appealed from is reversed and the cause is remanded with directions to grant the prayer of the petition and direct that the petitioners be made parties to the suit.