**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF SIOUX FALLS, A Corporation, Plaintiff,**

v.

**The FIRST NATIONAL BANK IN SIOUX FALLS, as Executor of the Estate of Cecil L. Anderson, and E. Jeanette Anderson, Defendant, Third Party Plaintiff and Appellant,**

**and**

**FIRST BANK OF SOUTH DAKOTA, N.A., Defendant and Appellee,**

v.

**The FIRST NATIONAL BANK IN SIOUX FALLS, Third Party Defendant.**

No. 15344.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1987.

Decided May 13, 1987.

Chanda Galloway Miller of Dorothy Law Firm, P.C., Sioux Falls, for appellant.

Donald N. Srstka, Sioux Falls, for appellee.

MILLER, Justice.

E. Jeanette Anderson (Jeanette) appeals from a summary judgment granted in favor of First Bank of South Dakota (First Bank). We affirm.

In 1978, Jeanette's husband Cecil L. Anderson (Cecil) mortgaged the couple's home. This mortgage, in the amount of $80,000, was given to First Federal Savings and Loan Association of Sioux Falls, South Dakota. Later, First Federal Savings and Loan merged with Home Federal Savings and Loan of Sioux Falls (Home Federal) whereunder Home Federal acquired all assets, including the Anderson mortgage. Although the property was titled in Cecil's name only, Jeanette also signed the mortgage to evidence the waiver of her homestead rights. This mortgage and waiver are not at issue here.

After Cecil's death in April, 1983, First National Bank of Sioux Falls (the executor) was named executor of his estate. Jeanette alleges an accounting conducted sometime during 1983 valued the estate at approximately $3.6 million. Nevertheless, the executor within a year thereafter began having difficulty making payments on the Home Federal mortgage as well as other estate debts. In order to meet these

payments and other expenses of the estate, in September of 1984 the executor received a $105,000 loan from First Bank, giving that institution a second mortgage on the Anderson home.

As part of this loan transaction with First Bank, Jeanette executed a document entitled "Consent to Mortgage and Waiver of Homestead Rights." This document reads, in pertinent part:

> WHEREAS, without the foregoing loan, the Executor would be unable to meet the financial and legal obligations of the estate, including the payment of the family allowance due and payable to [Jeanette] in the monthly amount of $2,200.00 ... and without which loan the Executor will furthermore be unable to meet the monthly installments ... [of the Home Federal loan] ... secured by a first mortgage ... [Jeanette] has agreed to consent to the mortgage required by [First] Bank ... and to waive her homestead rights under applicable South Dakota law; ... further subject to the right ... to continue to reside in the residence ... until [First] Bank shall have pursued any and all remedies available to it to properly marshall and liquidate all other collateral held by [First] Bank to secure the loan or loans by [First] Bank to the estate of [Cecil] Anderson, deceased....

This second mortgage apparently was the only collateral First Bank received. Although the estate gave First Bank a $120,000 note, the bank loaned the estate only $105,000, apparently because the estate owned only $105,000 worth of collateral.

Despite receiving the loan from First Bank, the estate was soon unable to continue to make payments on the first mortgage held by Home Federal. In November, 1985, Home Federal brought suit to foreclose its mortgage, naming the executor, Jeanette, and First Bank as defendants.

First Bank cross-claimed against the executor and Jeanette for their failure to make any payments due under the note executed in its favor. In the cross-claim, First Bank prayed for foreclosure of its second mortgage, judgment in the amount of $105,000, plus other items. Jeanette's reply to the cross-claim set forth various affirmative defenses.[1]

Home Federal and First Bank both moved for summary judgment. The trial court granted judgment of foreclosure in favor of Home Federal against the estate and against Jeanette on the first mortgage. This judgment of foreclosure is not appealed. The court also entered judgment of foreclosure in favor of First Bank against the executor and Jeanette on the second mortgage. This is the judgment from which Jeanette appeals.

First Bank's summary judgment motion was supported by three affidavits and other evidence, including the note and mortgage signed by the executor and the consent/waiver signed by Jeanette. This evidence established a prima facie right to foreclosure. An affidavit of the vice-president of First Bank stated the consent to mortgage and waiver of homestead rights was not prepared by an attorney or representative of First Bank but "was prepared by request of the attorney for E. Jeanette Anderson."[2] Jeanette's only response to the summary judgment motion was by an affidavit which simply stated that the facts set forth in her pleadings were correct.

Jeanette argues on appeal that First Bank's summary judgment motion was improperly granted because there were material facts in question regarding the existence of the numerous defenses she asserted to enforcement of her homestead waiver.

The showing an adverse party must make to successfully resist a motion for

1. Jeanette entered a third-party complaint against the executor alleging negligent management of her husband's estate and breach of fiduciary duty. The court granted First Bank's motion to strike this third-party complaint. This ruling was not appealed. Apparently this claim against the executor was already pending before the court hearing the probate of Cecil's estate. The executor is not a party to this appeal and we express no opinion as to whether a grant of summary judgment in favor of the executor against Jeanette would be proper.

2. Counsel representing Jeanette at the time the consent/waiver was executed is not her counsel on this appeal.

summary judgment is set out in SDCL 15–6–56(e). This provision states, in pertinent part:

When a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Hughes-Johnson Co. v. Dakota Midland Hospital,* 86 S.D. 361, 195 N.W.2d 519 (1972), is the seminal South Dakota case interpreting this statute. In this case we stated:

The burden, of course, is on the moving party to show there are no genuine issues of material facts. However, SDCL 15–6–56(e) requires the opposing party to be diligent in resisting a motion for summary judgment, and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment.

86 S.D. at 364, 195 N.W.2d at 521 (citations omitted). As we explained in *Hughes-Johnson,* "[t]o allow formal denials and conclusory pleadings to raise genuine issues against uncontradicted facts would nullify the utility of the [summary judgment] rule." 86 S.D. at 364, 195 N.W.2d at 520–21.

■ In *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983), we held a court may consider allegations contained in a verified complaint to determine if the requirements of SDCL 15–6–56(e) were met. The pleadings upon which Jeanette relies were not verified. However, her affidavit (made for the purposes of the summary judgment motion) swearing to the truth of the contents of her pleadings will for present purposes be considered as having the same affect as though her pleadings were verified. (We caution future litigants however that this is far from the preferred practice and may not in the future, after this warning, be acceptable or sufficient.) We therefore will consider whether the allegations contained in her pleadings were sufficient to raise a material factual issue.

■ Jeanette's pleadings contain a general denial of certain allegations essential to First Bank's prima facie case for foreclosure, such as First Bank's allegation that payments due under the note were delinquent. General denials are clearly insufficient to raise factual issues regarding the facts disputed. *See, e.g., Laber v. Koch,* 383 N.W.2d 490 (S.D.1986); *Western Cas. & Sur. Co. v. Gridley,* 362 N.W.2d 100 (S.D.1985); *Ruple, Hughes-Johnson, supra.* She also alleged her "signature was obtained through duress, fraud, undue influence or mistake." This is precisely the type of insufficient conclusory assertion referred to in SDCL 15–6–56(e).

■ Presumably, other allegations contained in Jeanette's pleadings were intended to give factual support to the defenses she pleaded and relied upon to resist the summary judgment motion. These allegations refer only to the conduct of the executor, however, not First Bank. For example, Jeanette alleged that the executor induced her to sign the homestead waiver by advising her that otherwise the estate would be unable to continue making her house and family allowance payments; that she was experiencing "significant mental problems" when she signed the waiver; that she resisted signing the waiver for several months and agreed to sign only when assured by the executor that the loan from First Bank would be used to continue making these payments; that she would not have signed had she believed the loan would not be so used; and that some of the loan money was not used for making the house and family allowance payments but instead was invested in a Colorado holding company which was foreclosed upon.

These allegations were insufficient to avoid summary judgment. Even assuming this alleged improper behavior on the part of the executor gave rise to any of the defenses asserted against First Bank, the allegations were unsupported by a shred of any factual evidence and were insufficiently specific to place facts into legitimate

dispute. *See Laber, Gridley, Ruple* and *Hughes-Johnson, supra.* Furthermore, Jeanette gave no reason excusing her failure to produce specific factual allegations. *See* SDCL 15–6–56(f).

■ The final allegation pleaded which may be considered as giving rise to a defense against First Bank is Jeanette's assertion that First Bank "failed to provide its part of the consideration that was the basis of the waiver of the homestead rights." This apparently refers to the fact that First Bank loaned only $105,000 instead of the $120,000 as provided in the note. Jeanette claimed the executor would have been able to continue making the house and family allowance payments had the additional $15,000 been paid. Again, this conclusion was unsupported by any factual evidence. As we stated in *Ruple,* "[f]acts must be met by facts, not by mere conclusions or denials." 328 N.W.2d at 861. *See N.W. Pub. Serv. Co. v. Chicago & N.W. Railway Co.,* 84 S.D. 271, 170 N.W.2d 351 (1969) (Roberts, J., dissenting) (citing Advisory Committee comments on point with this case).

To summarize, First Bank introduced evidence at the summary judgment hearing which established a prima facie right to foreclosure of its second mortgage. Jeanette failed to "set forth specific facts showing that there [was] a genuine issue for trial" as required by SDCL 15–6–56(e). Summary judgment was therefore properly granted.

Affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

A statute can be stretched like a rubber band, and, ultimately, you can stretch it only so far and then it breaks. The statute becomes no good. The rubber band becomes no good. Too much stretching erodes the statute until its original intent is destroyed. I concur in the result of this case only because I am afraid that the stretching will break the rubber band, nay the intent of the statute.

Appellant's pleadings were three in number and were all dated November 15, 1985. As the majority opinion points out, the pleadings were unverified. By affidavit of February 26, 1986, appellant supposedly "swears to the truth" of the November 15, 1985 pleadings. This is some type of a "retroactive swearing." The swearing itself is faulty because the affidavit says that the facts in the pleadings "are true and correct to the best of her knowledge, information and believe [sic]." This retroactive bootstrapping by the use of a 1986 so-called affidavit, to raise the pleadings back in 1985 to a level of being verified, is totally untenable as a matter of law.

This decision, although temporal in nature, does violence to our past holdings and to the intent of SDCL 15–6–56(e). Quite recently, in *Aetna Life Ins. Co. v. McElvain,* 363 N.W.2d 186, 188 (S.D.1985) (a mortgage foreclosure case), this Court expressed: "When considering a motion for summary judgment, the formal issues presented by the pleadings are not controlling and a party may not rest upon the mere allegations contained therein." In reviewing the affidavit and the pleadings of appellant, it is readily apparent that the pleadings do not contain specific facts but are rife with mere conclusions, legal arguments, legal contentions in supposed theory, and general allegations. This does not satisfy SDCL 15–6–56(e). In reading SDCL 15–6–56(e), it becomes obvious that affidavits shall be supporting affidavits and opposing affidavits and shall be made on personal knowledge; they are to "set forth such facts as would be admissible in evidence. . . ." It is manifest that the matters set forth in the pleadings, which are now retroactively "sworn to," are not evidence which is admissible in a court of law. Therefore, do not stretch the rubber band so that it breaks.

It behooves a party who resists summary judgment to go to work. When I say, go to work, I mean commence the business of being a good workmanlike lawyer. Oppose a summary judgment by assembling and

revealing your proofs. This practice of law can be accomplished by depositions, admissions and affidavits, but, controvert—controvert—controvert. *See* Smyser, *The Summary Judgment—Ascertainment of The Genuine Issue,* 16 S.D.L.Rev. 20, 23 (1971). Diligence is required in resisting a motion for summary judgment. *Lee v. Beauchene,* 337 N.W.2d 827, 829 (S.D. 1983). Once a motion for summary judgment is supported, the nonmoving party must show that genuine issues of fact exist for trial. *Hunt v. Briggs,* 267 N.W.2d 566, 567 (S.D.1978).

Reference is made to a recent negligent representation case, *Peterson v. Rogers,* 347 N.W.2d 580 (S.D.1984), wherein this Court upheld summary judgment because the party opposing the motion filed no affidavits and relied exclusively upon general allegations reflected in the pleadings. In *Peterson,* 347 N.W.2d at 581, we stated:

> SDCL 15–6–56(e) requires the party opposing a summary judgment motion to be diligent in resisting it; mere general allegations which do not set forth specific facts will not prevent issuance of a summary judgment. Since appellants have failed to set forth any evidence on the essential element of the falsity of the representation, summary judgment was properly granted. (Citations omitted.)

I acknowledge the *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983), rule concerning the acceptability of verified complaints.

Here, as the majority opinion points out, appellant simply did not verify the pleadings. Appellant's affidavit is a backdoor attempt to verify a pleading. It is a weak affidavit, to say the least, because it is upon "information and believe [sic]." It is further ill because it refers to pleadings that do not fall within the rules of evidence and are conclusory in nature. Facts advanced by a summary judgment cannot be met by denials, allegations and legal conclusions. If the courts of this state permitted such type of procedure to raise genuine issues, against uncontradicted facts, it would nullify the utility of the rule itself. *See Ruple,* 328 N.W.2d at 861.

Therefore, although I agree with the general principle and citations set forth in the majority opinion, I do not agree that "[w]e therefore will consider whether the allegations contained in her pleadings were sufficient to raise a material factual issue." I do appreciate the general tenor of the majority opinion, that this is not a preferred practice and "may not in the future, after this warning, be acceptable or sufficient."