Lawrence DIRKS, Plaintiff
and Appellant,

v.

SIOUX VALLEY EMPIRE ELECTRIC
ASSOCIATION, INC., Defendant
and Appellee.

No. 16463.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1989.

Reassigned Dec. 4, 1989.

Decided Jan. 17, 1990.

Jerome B. Lammers of Lammers, Lammers & Kleibacker, Madison, for plaintiff and appellant.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

MORGAN, Justice (on reassignment).

Lawrence Dirks (Dirks) appeals a summary judgment which dismissed his actions for (1) breach of employment contract, and (2) violation of right-to-work laws. We affirm.

Dirks, a journeyman electrician, was employed by Sioux Valley Empire Electric Association (Sioux Valley) from 1980 until July of 1984. In July 1984, a collective-bargaining agreement existed between Sioux Valley and Local Union 426 of the Interna-

tional Brotherhood of Electrical Workers. That agreement provided that no employee could be discharged "without cause" and established a four-step grievance and arbitration procedure for resolving disputes over alleged violations of the agreement.

On July 5, 1984, Dirks was suspended for striking fellow employee Larry Lund (Lund). The incident occurred earlier that morning when Dirks asked Lund if he would let Dirks use a particular truck for his work duties that day. Lund said he needed the truck. Dirks accused Lund of lying. Lund and several employees stated that Dirks struck Lund on the shoulder with a closed fist. Dirks claimed he merely tapped Lund to get his attention.

On July 13, 1984, Dirks' employment was terminated. In terminating Dirks' employment, Joe Norton (Norton), Sioux Valley's director of member services, relied upon an operating guide established by Sioux Valley's board of directors. A portion of that operating guide provided:

> Employees who are past their probationary period are subject to discipline, suspension or discharge only for cause. Non-probationary employees will be subject to immediate discharge only for major violations, such as theft.

Norton said striking a fellow employee constituted "cause" and a "major violation." The operating guide also noted its subservience to the collective-bargaining agreement in cases of conflicts. "Where these practices are found to be in conflict with ... other contractual agreements, the provisions of such ... contracts shall apply."

Dirks, who was not a union member, submitted a grievance on July 9, 1984. After his termination, Dirks wrote James Kiley (Kiley), Sioux Valley's manager, and said he wanted to pursue remedies under the operating guide. Kiley told Dirks his employment and grievance were governed by the collective-bargaining agreement. After another exchange of letters in which Dirks stated he was not a union member and Kiley reiterated that the collective-bargaining agreement applied, Dirks filed a written grievance on July 31, 1984, in accordance with the third step of the collec-

tive-bargaining agreement. In accordance therewith, a meeting was held on September 20, 1984. Dirks, who appeared with counsel, took the position that the agreement did not apply and his appearance was not consent to it applying. The decision to discharge Dirks was upheld. Dirks' counsel then initiated the fourth and final step of the collective-bargaining grievance procedure, arbitration. Dirks' counsel reiterated Dirks' position that the agreement did not apply. The arbitration committee met on November 30 and December 7, 1984. After reviewing all the evidence, the committee voted unanimously to support the decision to discharge Dirks.

Dirks subsequently filed suit against Sioux Valley, alleging breach of his employment contract and violation of his right to work. The trial court granted summary judgment in favor of Sioux Valley on both claims. The court stated that the collective-bargaining agreement covered all employees of Sioux Valley, including non-union employees, and, since Dirks was subject to the collective-bargaining agreement, his breach of contract action under state law was preempted by Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185(a) (§ 301). The court further held there was no evidence to support Dirks' claim that his right-to-work was knowingly and willfully violated.

Dirks raises the following issues:

(1) Whether the trial court erred in granting summary judgment on the basis that Dirks' breach of contract claim is barred by the collective bargaining and the federal Labor Management Relations Act.

(2) Whether the trial court erred in granting summary judgment on Dirks' claim that his right to work was violated.

Our standard of review on these two issues is well established. It is fundamental that summary judgment cannot be granted if there are questions of fact to be determined. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987). However, construction of a written con-

tract is a question of law for this court to consider. *Delzer Construction Co. v. South Dakota Bd. of Trans.*, 275 N.W.2d 352 (S.D.1979).

■ Dirks claims the trial court erred in holding that the breach of contract action was preempted by § 301. Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court has held that, under § 301, federal labor law preempts state law in relation to a collective-bargaining agreement. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The rationale for this preemption rule is the need for uniformity and predictability in the interpretation of labor contract disputes. *Id.* Applying both state and federal law to such disputes could be disruptive:

The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.

*Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593, 599 (1962). Whether the preemption rule applies to a contract dispute depends upon "whether evaluation of the [claim] is inextricably intertwined with consideration of the terms of the labor contract." *Allis*

*Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. If so, the rule applies. Conversely, if the claim may be resolved pursuant to state law that "prescribe[s] conduct, or establish[es] rights and obligations, independent of a labor contract," preemption by § 301 will not arise. *Id.*, 471 U.S. at 212, 105 S.Ct. at 1912, 85 L.Ed.2d at 216.

Dirks contends that interpretation of the collective-bargaining agreement is unnecessary to resolve his claim initiated under the operating guide. This myopic stance disregards the provision of the operating guide that states that where its "practices conflict with other contractual agreements, the provisions of such ... contracts shall apply."

Here, the operating guide conflicts with the collective-bargaining procedures for termination of employees for cause. While it is true that both the collective-bargaining agreement and the operating guide only permit the discharge of a non-probationary employee for cause, there is an inherent conflict in the procedure for termination. The collective-bargaining agreement sets out a four-step grievance procedure before an employee may be discharged. The one-page operating guide provides no such protection; therefore, its lack of protections is in "conflict with ... other contractual agreements" found in the collective-bargaining agreement. By the operating guide's own language, it is preempted by the collective-bargaining agreement. Dirks may not give up more favorable benefits secured by the collective-bargaining agreement. The United States Supreme Court has said that an individual contract may not forfeit these superior rights found in the collective-bargaining agreement.

But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, even if on his own he would yield to less favorable terms. *The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits.* (Emphasis supplied.)

*J.I. Case Co. v. Labor Board*, 321 U.S. 332, 336, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944). Thus, even if Dirks had an independent contract, it became subsidiary to the collective bargaining agreement and *requires* reference to it.

Nor are we persuaded by Dirks' retrogressive theory that the operating guide is an independent contract because there is nothing in the collective bargaining prohibiting its application.[1] In support of this proposition and in recognition of the fact that the Supreme Court has said that individual employment contracts could exist outside the collective-bargaining agreement, Dirks cites us to *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). That case is wholly distinguishable from the facts at hand. As the Court said:

> It [the independent contract] does not rely upon the collective agreement *indirectly, nor does it address the relationship between the individual contracts and the collective agreement....* But respondents rely on contractual agreements made while they were in managerial or weekly salaried positions—*agreements in which the collective bargaining agreement played no part.*

482 U.S. at 395 & n. 9, 107 S.Ct. at 2431 & n. 9, 96 L.Ed.2d at 329 & n. 9 (emphasis added). Such was not the case here. Dirks was employed in a position expressly incorporated in the collective-bargaining agreement. It is the collective-bargaining agreement that sets Dirks' wages, hours, overtime, vacation time, etc. He apparently accepted all of the benefits of that agreement. The operating guide provided none of these vital provisions, and by its own language was preempted by the collective-bargaining agreement. Unlike *Caterpillar*, the operating guide addresses its subservient relationship to, and reliance on, the collective-bargaining agreement.

*Lingle v. Norg Division of Magic Chef*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the other case cited supporting the theory for independent contracts, is also distinguishable from the case at bar. Lingle was discharged for filing a false worker's compensation claim and in turn filed a tort claim for retaliatory discharge. Granted, the Supreme Court said that "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." Dirks filed a contract claim, not a tort claim. A tort claim would not require reference to the agreement to decide the issue, whereas reference to the collective-bargaining agreement, incorporated by reference in the operating guide, is necessary to provide the four steps of due process protection not provided in the operating guide.

Finally, we think that the status of the operating guide is misapprehended by Dirks. South Dakota is an "employment at will" state. SDCL 60–4–4.[2] *Tombollo v. Dunn*, 342 N.W.2d 23, 25–6 (S.D.1984). Our holdings in *Osterkamp v. Alkota Mfg.*, 332 N.W.2d 275 (S.D.1983), followed by *Hopes v. Black Hills Power & Light*, 386 N.W.2d 490 (S.D.1986); *Blote v. First Federal Sav. & Loan Ass'n*, 422 N.W.2d 834 (S.D.1988); and *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225 (S.D.1988), did not change that status of employment; rather, we merely said that where the employer had adopted a policy and disseminated it to his employees, the employer was bound to conform. In this case, Dirks started out as an employee at will with some apparent protection of the operating guide, but he became a contract employee under the provisions of the collective-bargaining agreement and is covered by its discharge procedures.

Therefore, the trial court did not err in granting summary judgment against Dirks' breach of contract claim.

■■■ We next consider Dirks' right-to-work claim. He alleges in his complaint that Sioux Valley violated his right-to-work

---

**1.** As was just discussed above, it is not possible to provide the four-level grievance protection of the collective-bargaining agreement by following the operating guide.

**2.** SDCL 60–4–4 provides: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute."

under SDCL 60–8–3.[3] To support a cause of action for violation of the right to work, it must be shown that a person was directly or indirectly required to belong to a union to obtain or retain a job. *Levasseur v. Wheeldon*, 79 S.D. 442, 112 N.W.2d 894 (1962); 48 Am.Jur.2d *Labor and Labor Relations* § 12 (1979). Aside from his complaint, Dirks did not submit any other evidence to support his right-to-work claim. A party may not rest upon the allegations in pleadings to raise a genuine issue of material fact. A party must present specific facts demonstrating the existence of genuine material issues, not mere conclusory allegations. *Home Federal Sav. & Loan v. First Nat'l Bank*, 405 N.W.2d 655 (S.D.1987); *Aetna Life Ins. Co. v. McElvain*, 363 N.W.2d 186 (S.D.1985); *Western Casualty & Surety Co. v. Gridley*, 362 N.W.2d 100 (S.D.1985). The trial court properly granted summary judgment on the right-to-work claim.

Affirmed.

HENDERSON and MILLER, JJ., concur.

WUEST, C.J., and SABERS, J., concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

I concur with the majority on the right-to-work claim, but dissent on the breach of contract claim. By concluding that Dirks' breach of contract action is preempted by § 301 of the Labor Management Relations Act, the majority expands the § 301 preemption rule beyond its proper scope.

The narrow scope of the § 301 preemption rule has been explained by the United States Supreme Court:

> Nor do we hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301.

*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206, 221 (1985). The scope of the § 301 preemption rule was further developed and narrowed in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), where the Supreme Court held that a state tort claim for retaliatory discharge was not preempted by § 301. The Court concluded that resolution of the state law claim did not depend on the interpretation of the meaning of the collective bargaining agreement. As a result, the claim did not endanger the need for a uniform interpretation of the collective bargaining agreement. The Court stated:

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, *as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.*

*Lingle, supra,* 486 U.S. at 410, 108 S.Ct. at 1883, 100 L.Ed.2d at 421 (emphasis added). The majority attempts to distinguish *Lingle* by pointing out that the case involved a tort claim while Dirks asserts a contract claim. However, the type of claim is irrelevant. The *Lingle* Court referred to a "state-law claim" not a "state-law tort claim." The majority misses the key point that the focus of a court's inquiry is whether the state law claim, regardless of its nature, necessitates interpretation of the collective bargaining agreement. When a state law claim can be resolved without interpretation of the collective bargaining agreement, the claim is not preempted by § 301.

Dirks contends interpretation of the agreement is not necessary to resolve his claim. From the record, it is clear his termination was based upon Board Operating Guide 7–1, with the collective bargain-

---

**3.** SDCL 60–8–3 provides: "No person shall be deprived of life, liberty, or property without due process of law. The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union, or labor organization. Violation of this section is a Class 2 misdemeanor."

ing agreement not invoked by Sioux Valley until after the termination when Dirks challenged the action. In addition, the agreement is almost silent on the matter of employee discharge. Article I, Section 3 simply provides that the right to discharge shall remain with Sioux Valley, provided no discharge shall be made without cause. Board Operating Guide 7–1, on the other hand, contains more detailed employment practices relating to discharge. For example, the provision of the operating guide under which Dirks was terminated states that non-probationary employees may be discharged only for cause, and they "will be subject to immediate discharge only for major violations such as theft." Nothing in this provision of the operating guide *conflicts with nor necessitates interpretation* of the collective bargaining agreement. Any action taken in compliance with this provision of the operating guide would comply with the collective bargaining agreement, i.e., the employee would be discharged only for cause. As a result, the question is not whether Dirks' discharge was in compliance with the collective bargaining agreement, but whether his discharge was in compliance with the operating guide. The answer to the question simply does not require interpretation of the collective bargaining agreement. The majority opinion fails to identify even one provision of the agreement that must be *interpreted* before Dirks' claim can be resolved. Therefore, Dirks' termination under the guidelines gives rise to a state law breach of contract action that is not preempted by § 301.

The majority claims the operating guide conflicts with the collective bargaining agreement because it would deny Dirks the benefit of the agreement's "four-step grievance procedure before an employee may be discharged." This is an incorrect interpretation of the collective bargaining agreement and the operating guide. The grievance procedure is not required to be used before an employee may be discharged as the collective bargaining agreement explicitly makes the grievance procedure applicable only to "any dispute involving the application or alleged violation of

any provision of *this agreement.*" (emphasis added). Since Dirks is not claiming Sioux Valley violated the collective bargaining agreement, the grievance procedure is inapplicable. Nor has Dirks bargained away the benefit of the grievance procedure, for it is still available to him for a violation of the collective bargaining agreement. Dirks is simply attempting to enforce a contract other than the collective bargaining agreement and the court in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), approved of such a claim.

Although Dirks falls under the coverage of the collective bargaining agreement, that alone does not cause the operating guide to be superseded. *Id.* The majority cites *J.I. Case Co. v. National Labor Relations Bd.,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), for the proposition that all independent contracts become merely a part of a collective bargaining agreement. This is incorrect. As stated in *Caterpillar, supra,* 482 U.S. at 396, 107 S.Ct. at 2431, 96 L.Ed.2d at 329:

> *J.I. Case* does not stand for the proposition that all individual employment contracts are subsumed into, or eliminated by, the collective-bargaining agreement.

*J.I. Case* stands for the proposition that an individual contract may not give up benefits; nothing is said about an independent contract that goes beyond the terms of the collective bargaining agreement. In *Caterpillar,* the Supreme Court recognized that individual employment contracts could exist outside the collective bargaining agreement. The Court stated that employees may bring suit under either an individual contract or a collective bargaining agreement:

> Respondents allege that Caterpillar has entered into and breached individual employment contracts with them. Section 301 says nothing about the content or validity of *individual* employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301.

As masters of the complaint, however, they chose not to do so.

*Id.*, 482 U.S. at 394–5, 107 S.Ct. at 2431, 96 L.Ed.2d at 328–9. Explaining that not all individual employment contracts are eliminated by the mere existence of a collective bargaining agreement, the Court further stated:

> Thus, individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.

*Id.*, 482 U.S. at 396, 107 S.Ct. at 2431–2, 96 L.Ed.2d at 329–30. Section 301 does not require that every employment dispute involving an employee covered by a collective bargaining agreement "be resolved through collective bargaining and thus be governed by a federal common law created by § 301." *Id.*, 482 U.S. at 396, 107 S.Ct. at 2432, 96 L.Ed.2d at 330 n. 10.*

It is clear from Norton's memo of July 13, 1984, that Dirks was terminated under Board Operating Guide 7–1, not the collective bargaining agreement. Accordingly, Dirks is free to assert his state-law contract rights under the operating guidelines. *See Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983). While he could have filed a grievance procedure in accordance with the collective bargaining agreement and then brought suit under § 301, he chose not to do so. Instead, he chose to pursue his state-law remedy, as did the plaintiffs in *Caterpillar.*

Under the record, there is a genuine issue of material fact whether Dirks struck another employee in a manner constituting a major offense under the policy guideline. *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987). While several employees stated that Dirks struck Lund, Dirks claimed he merely tapped Lund on the shoulder. There is a clear factual dispute and summary judgment was improperly granted.

I am authorized to state that WUEST, C.J., joins in this special writing.

---

* The majority says *Caterpillar* is distinguishable because the independent contracts in that case were made when the employees were not under a collective bargaining agreement. However, that argument fails to grasp the breadth of the Court's holding in *Caterpillar.* The Court explicitly stated that a plaintiff covered by a collective bargaining agreement may assert state-law contract rights independent of the collective bargaining agreement. The fact the contracts were made when the *Caterpillar* employees were in managerial positions was not critical to the Court's holding and was offered simply as a reason why, under California law, the collective bargaining agreement was irrelevant to the individual contracts.