2000 SD 43

**In the Matter of the ELECTION CONTEST AS TO WATERTOWN SPECIAL REFERENDUM ELECTION OF OCTOBER 26, 1999, PERTAINING TO REFERRED BALLOT ISSUES NO. 1 AND 2.**

No. 21326.

Supreme Court of South Dakota.

Considered on Briefs March 9, 2000.

Decided March 29, 2000.

Robert L. Spears of Spears Law Office, Watertown, for appellants Gretchen Porisch, Maxine Andree and Donald Fischer.

Thomas J. Linngren of Green, Schulz, Roby, Oviatt Cummings & Linngren, Watertown, for appellees Prairie Lakes Health Care System, Inc. and Sioux Valley Physician Partners, d/b/a Bartron Clinic.

Roy A. Wise of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for appellees Watertown City Council, Watertown Mayor and Watertown City Finance Officer.

KONENKAMP, Justice.

[¶ 1.] Complainants appeal the dismissal of an election contest proceeding. We reverse and remand.

## FACTS

[¶ 2.] In the latter part of 1999, the Watertown City Council approved the rezoning of certain property and the vacation of a public right-of-way to permit the expansion of certain health care facilities in the community. In response, a citizens group collected sufficient signatures to refer the matter to a public vote. Although the referendum and a subsequent recount sustained the Council's actions, three registered voters initiated election contest proceedings in circuit court.

[¶ 3.] Before commencement of the election contest, counsel for the complainants filed an initial complaint and obtained the trial court's permission to proceed as required by SDCL 12–22–3:

> Such contest may be instituted by any registered voter who was entitled to vote on a referred or submitted question, but in such case such contest may be instituted only with the permission of a judge of the court in which such contest is instituted, endorsed upon the complaint before the same is filed.

Counsel then served an amended complaint on the various respondents and parties in interest as determined by the trial court.[1] The respondent health care pro-

---

1. *See* SDCL 12–22–15 providing in pertinent part that:

   In other cases involving a submitted or referred question, the court shall, upon filing [of] the complaint, direct by order the service upon such persons or officials as the court believes might be interested in resisting the relief sought.

viders served and filed an answer seeking a dismissal of the amended complaint on the basis that the complainants failed to file a "verified" complaint as required by SDCL 12–22–8:

> Such contest shall be deemed commenced upon the filing with the clerk of the court of a summons and complaint, *which complaint shall be duly verified,* and set forth a concise statement of the facts on which the contest is based. (emphasis added).

The providers also noticed a hearing on their motion to dismiss set for December 1. In the interim, the respondent city filed its own answer contesting the complainants' failure to file a verified complaint and joined with the motion to dismiss set for hearing on December 1.

[¶ 4.] On November 30, counsel for the complainants filed an affidavit for himself, for a member of his staff, and for each of the complainants. Generally the affidavits established that, while the initial and amended complaints lacked a written verification, an oral oath was administered before the complaints were executed affirming that the information they contained was "true to the best of [the complainants'] knowledge, information and belief."

[¶ 5.] At the close of the December 1 hearing, the trial court ruled that, notwithstanding these affidavits, SDCL 12–22–8 required a written verification on the face of their amended complaint. It also concluded that the pleadings failed to satisfactorily indicate what matters were alleged on information and what matters were alleged on belief.[2] Because the amended complaint was not verified and, therefore, did not meet statutory requirements, the trial court ruled that it had no subject matter jurisdiction and dismissed the proceedings. Complainants appeal.

## ANALYSIS AND DECISION

■ [¶ 6.] **Is the amended complaint sufficient without an inscribed verification?**

2. SDCL 12–22–8 does not require the verification to distinguish between what information

A motion to dismiss under SDCL 15–6–12(b) tests the legal sufficiency of the pleading, not the facts which support it. For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader. "Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law?"

*Yankton Ethanol, Inc. v. Vironment, Inc.,* 1999 SD 42, ¶ 6, 592 N.W.2d 596, 597–98 (citations omitted) (quoting *Steiner v. County of Marshall,* 1997 SD 109, ¶ 16, 568 N.W.2d 627, 631).

[¶ 7.] We find no defect in the amended complaint sufficient to warrant dismissal. The plain language of SDCL 12–22–8 does require the filing of a "verified" complaint in an election contest, but it does not require a written verification.

> The first definition assigned to the word "verify" by Black's Law Dictionary is "To confirm or substantiate by oath." A verification is " * * * a sworn statement of the truth of the facts stated in the instrument verified. It always involves the administration of an oath. 1 AmJur 942, § 13, 949; 44 Words & Phrases Verification; Verify 138, 142." *Bell and Zajicek, Inc. v. Heyward–Robinson Co.,* 1962, 23 Conn.Supp. 296, 182 A.2d 339.

*Crescent Electric Supply Co. v. Nerison,* 89 S.D. 203, 209, 232 N.W.2d 76, 79 (1975). Although this language might suggest the necessity of a written oath on the complaint—most commonly an oath will be inscribed at the bottom of such documents—it is a generally accepted rule that, "[a]n oral oath to a pleading [is] sufficient unless a written oath is prescribed." 71 CJS *Pleading* § 359 (1951). Such was the conclusion of the Florida Supreme Court in *Cline v. Cline,* 101 Fla. 488, 134 So. 546 (1931). There, certain petitioners sought to intervene in a suit for the partition of

is alleged on belief and what is alleged on information.

real estate. To their petition was attached an affidavit by a notary public indicating one of the petitioners had appeared personally before him and verified the truth of the allegations of the petition based upon her own knowledge or on information and belief. In reviewing the sufficiency of the verification, the Florida Court concluded: "[w]e have been cited to no law requiring an oath to the petition to be in writing and signed by the person making it. As a rule an oral oath is sufficient unless a written oath is prescribed." *Cline*, 134 So. at 549.

[¶ 8.] In *State v. Weinstein*, 395 S.W.2d 525 (Mo.Ct.App.1965), a plaintiff sought recovery of an overdue account. The defendants answered and counterclaimed, but failed to attach a written verification or affidavit to their pleadings. Instead, the defendants' attorney appeared before the magistrate and made an oral oath that the matters contained in the counterclaim were true to the best of his knowledge, information, and belief. In later writ of prohibition proceedings, the plaintiff argued the oral oath taken by the defendants' counsel did not constitute compliance with the statutory pleading requirement that, "the defendant, or some credible person in his behalf, by his oath [verify] the truth of the allegations of the counterclaim[.]" *Weinstein*, 395 S.W.2d at 527. The Missouri court disagreed stating:

> [T]he very construction of the sentence in which this phrase appears would have allowed the legislature to have easily substituted the words "by affidavit" or "in writing" in lieu of the phrase "by his oath." The only reasonable conclusion to be drawn from the failure of the legislature to use different language is that they intended the phrase "by his oath" to refer to the word "verifies" and were stating how they intended the defendant or the person acting in the defendant's behalf to verify the truth of the allegations of the counterclaim; i.e., by an oath. The legislature intended

the oath to be sufficient and did not intend to require a writing of any kind. *Weinstein*, 395 S.W.2d at 527–28.

[¶ 9.] Here, after the issue of lack of verification of the amended complaint was first raised, counsel for the complainants filed a series of affidavits to establish that, when the complainants signed the initial and amended complaints, an oral oath was administered to verify the facts they were alleging were true to the best of their knowledge, information, and belief. Verification was therefore contemporaneous with the signing of both the complaint and the amended complaint. Perhaps if counsel had attempted to retrofit the complaints with later verifications we might be compelled to rule otherwise. Yet no one contradicted the representation that oaths were given at the same time the complaints were executed. This is not a case of "substantial compliance," but an instance where courts will not rewrite a statute to add words not there. As this election contest is a legislatively authorized proceeding, the statute creating it is "to be liberally construed with a view to effect its objects and to promote justice." SDCL 2–14–12. Under the above authorities, complainants sufficiently complied with the pleading requisites of SDCL 12–22–8. Accordingly, the trial court erred in dismissing the amended complaint for lack of proper verification.

[¶ 10.] Reversed and remanded.

[¶ 11.] MILLER, Chief Justice, and SABERS, Justice, concur.

[¶ 12.] AMUNDSON and GILBERTSON, Justices, dissent.

AMUNDSON, Justice (dissenting).

[¶ 13.] In the present case, we are faced with the interpretation of SDCL 12–22–8, which provides that an election contest "shall be deemed *commenced* upon the *filing* with the clerk of court of a *summons and complaint, which complaint shall be duly verified,* and set forth a concise statement of the facts on which the

contest is based." (emphasis added). We have often stated,

"The purpose of rules regarding the construction of statutes is to discover the true intention of the law, and said intention is to be ascertained by the court primarily from the language expressed in the statute. In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.

While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

One of the primary rules of statutory ... construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute."

*South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exch.*, 1999 SD 2, ¶ 17, 589 N.W.2d 206, 209 (quoting *Delano v. Petteys*, 520 N.W.2d 606, 608 (S.D.1994) (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 884–85 (S.D.1984))).

[¶ 14.] A review of SDCL 12–22–8 clearly and unambiguously reveals the legislature required that a "verified complaint" be filed with the clerk of courts in order to commence an election contest. In the present case, complainants filed an initial complaint, but it was not "verified." Later, complainants filed affidavits claiming that an "oral oath" was given and therefore, the complaint was verified. While the majority agrees that no written verification is required and the oral oath was sufficient to verify the complaint, I would disagree.

[¶ 15.] The case of *Cline v. Cline*, 101 Fla. 488, 134 So. 546 (1931), which is cited by the majority, is clearly distinguishable from the present case. In *Cline*, an affidavit was attached to the petition which was signed by a notary public and stated that Catalina de Cline "personally appeared before me," but the signature is not that of Catalina de Cline. The majority of this Court quotes the Florida court's holding that "[w]e have been cited no law requiring an oath to the petition to be in writing and signed by the person making it. As a rule an oral oath is sufficient unless a written oath is prescribed." *Id.* at 549. The present case is clearly distinguishable because we have no affidavit attached to the complaint as in *Cline*. Instead, we are faced with affidavits stating that an oral verification oath was given at the time of signing, but these affidavits were filed to resist the motion to dismiss.[3]

[¶ 16.] In *Home Federal Savings & Loan Ass'n of Sioux Falls v. First Bank of South Dakota*, 405 N.W.2d 655 (S.D.1987), the court was faced with a summary judgment motion and a party's sole response to the motion being an "affidavit which simply stated that the facts set forth in her pleadings were correct." *Id.* at 657. The majority noted that "a court may consider allegations contained in a verified complaint to determine if the requirements of SDCL 15–6–56(e) were met." *Id.* at 658.

---

**3.** A review of the transcript at the motion hearing contains the following argument by counsel for the complainants:

I am not happy with what happened here. And I assure this Court that I accept responsibility and it absolutely won't happen again.... We didn't type the magic words down on the paper, that was unfortunate, but that was a clerical error.

This clearly shows that in arguing substantial compliance, counsel acknowledged that the complaint must be verified when filed. The trial court did not buy into counsel's substantial compliance argument.

The court found that the pleadings were not verified, but that a "swearing to the truth of the contents of her pleadings will for present purposes be considered as having the same affect as though her pleadings were verified." *Id.* Justice Henderson poignantly noted,

> the pleadings were unverified. By affidavit of February 26, 1986, appellant supposedly "swears to the truth" of the November 15, 1985 pleadings. This is some type of a "retroactive swearing." The swearing itself is faulty because the affidavit says that the facts in the pleadings "are true and correct to the best of her knowledge, information and believe [sic]." This retroactive bootstrapping by the use of a 1986 so-called affidavit, to raise the pleadings back in 1985 to a level of being verified, is totally untenable as a matter of law.

*Id.* at 659 (Henderson, J., concurring in result).

[¶ 17.] To allow these later-filed affidavits in the present case to constitute a valid verification allows parties to "retroactively bootstrap" around the statutory requirement that the election contest shall be commenced upon the filing of a verified complaint and summons. Further, the allowance of these affidavits to constitute valid verification also opens the door to parties fabricating whether an oath was in fact given. The statute clearly requires that the verification accompany the complaint when filing an election contest action. No verified complaint was ever filed;

therefore, the election contest was never properly commenced.[4] I would affirm.

GILBERTSON, Justice (dissenting).

[¶ 18.] Our State Motto is "Under God the People Rule." We have ruled ourselves since 1889 through elections. Here an election took place to determine whether Watertown would modify an existing neighborhood for improvements in its health care facilities. The election was apparently hotly contested and the end result a close one.

[¶ 19.] A setting aside of the people's decision is a serious one not to be taken lightly. Our legislature has recognized this and requires before such a challenge may be considered by the courts, those who seek the election's overthrow do so by a complaint that is verified. This requires the challengers not only to make claims of electoral injustice but make them under oath. An oath is not an idle act or a mere formality. Lying under oath is perjury and is a felony punishable by five years in the state penitentiary. *See* SDCL 22–29–1 and 5, 22–6–1. Considering what is at stake over whether the apparent will of the majority of the electorate is to be cast aside, this is appropriate. On the other hand an election contest provides a vehicle to right any wrongs which could have affected the legitimate outcome of the election.

[¶ 20.] Here the challengers filed their written complaint but no written verifica-

---

**4.** In *People v. Phillipe,* 142 Misc.2d 574, 538 N.Y.S.2d 400, 404–05 (N.Y.Crim.Ct. 1989), the court discussed the importance of verification and stated:

> Verification of a document is the written equivalent of a testimonial oath.... It alerts the witness that his statement has jural effect, on himself as well as on others. While it is no guarantee of truthfulness, neither is it meaningless ritual. The oath not only places the witness on notice that he must speak the truth, it serves as the foundation for a subsequent perjury prosecution. [citations omitted.] Indeed, it is the ritualistic quality of the oath, affirmation or attestation procedure which reminds the witness of his obligation. [citation omitted.]

> . . . .
> [T]he verification procedure must be performed in a manner that both complies with the formal requirements of statute and impresses upon the deponent the realization that he is performing a jural act....
> Consequently, if the deponents at bar signed the depositions without a contemporaneous understanding of the self-attestation warning printed above the signature-line, the signature cannot be deemed effective verification. These considerations strike at the very purpose of verification and accordingly must be deemed substantive requirements.
> Clearly, the verification requirement of our statute has not been met in the present case.

tion was attached stating the allegations were made under oath and thus under penalty of perjury. No one disputes they orally took such an oath. However, only after the filing of a motion to dismiss, did the challengers file affidavits declaring they had orally verified their complaint at the time they signed it.

[¶ 21.] Given what is at stake, I cannot believe the legislature had such an oral verification option in mind when it required verification under oath as a jurisdictional prerequisite to an election challenge. The explicit words of SDCL 12–22–8 require that to commence this proceeding, there shall be a "filing" of a "summons and complaint, which complaint shall be duly verified." How do you simultaneously file with the clerk an oral verification and the written complaint? It did not happen here. Whether the contestants took an oral oath (verification) is not the point. They did not file it with the Clerk when they filed their written complaint and thus the jurisdictional pre-requisite of SDCL 12–22–8 is not satisfied.

[¶ 22.] In addition I join in the dissent of Justice Amundson.